**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Progress, | No. CV-25-00212-TUC-RM |
| Petitioner, | **ORDER** |
| v. | |
| OTL Firearms and Imports Corporation, | |
| Respondent. | |

Pending before the Court is a Petition to Confirm Arbitration Award filed by Subsidiary Enterprise of State Company "Ukrspecexport" State Enterprise Specialized Foreign Trade Firm "Progress" ("Progress"). (Doc. 1.) OTL Firearms and Imports Corporation ("OTL") filed an Answer and Cross-Petition (Doc. 10), and Progress filed an Opposition to the Cross-Petition (Doc. 12). The Court held oral argument on September 2, 2025. (Doc. 14.)

**I.       Background**

Progress is a Ukrainian company with its principal place of business in Kiev, Ukraine. (Doc. 1 at 3 ¶ 11; Doc. 10 at 2 ¶ 11.) OTL is an Arizona corporation with its principal place of business in Tucson, Arizona. (Doc. 1 at 3 ¶ 12; Doc. 10 at 2 ¶ 12.) Progress and OTL entered into a purchase agreement for protective gear ("the Contract") on June 17, 2022. (Doc. 1 at 1 ¶ 2; Doc. 10 at 2 ¶ 2.) Clause 12.2 of the Contract provides as follows:

> All disputes or claims arising out of or in connection with this Contract, including disputes concerning its validity, breach, termination or nullity,

> shall be settled definitively in accordance with the arbitration Rules of the International Arbitration Center (VIAC) at the Austrian Federal Economic Chamber (Vienna Rules) by three arbitrators appointed in accordance with the said Rules . . . . The language of the arbitration shall be English. The decision of the arbitral tribunal shall be final and binding on both Parties. In case of discrepancies or any differences in the meaning of the terms, the text of the Contract drawn up in the English language shall prevail. Substantive law applied by the VIAC—the substantive law of the plaintiff.

(Doc. 1-2 at 10-11.)

Progress initiated arbitration against OTL on May 1, 2023, seeking damages and declaratory relief for alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. (Doc. 1 at 2, 4 ¶¶ 4, 18; Doc. 10 at 2-3 ¶¶ 4, 18.) The Arbitral Tribunal held a two-day hearing in Vienna, Austria, during which both parties had the opportunity through counsel to present their cases, make arguments, and cross-examine adverse witnesses. (Doc. 1 at 2, 4-5 ¶¶ 4, 19; Doc. 10 at 2-3 ¶¶ 4, 19.) The Tribunal issued a Final Award on October 30, 2024. (Doc. 1 at 2, 5 ¶¶ 5, 20; Doc. 10 at 2-3 ¶¶ 5, 20; *see also* Doc. 1-2 at 26-96.)

In relevant part, the Tribunal concluded that it had jurisdiction notwithstanding OTL's argument that the parties' arbitration agreement was unenforceable due to an invalid choice-of-law provision. (Doc. 1-2 at 47-57.) The Tribunal found that the parties intended the Contract's choice-of-law provision to "govern issues of substance related to the Contract," that the arbitration agreement is "governed by the principle of separability in relation with the Contract," and that the choice-of-law provision accordingly "has no impact on the validity and operability" of the arbitration agreement. (*Id.* at 54-55.) In the alternative, the Tribunal found that, even if the choice-of-law provision refers to the law applicable to the arbitration agreement, the choice-of-law provision "is not functional and does not produce effects," leading to the same conclusion that the parties did not make a choice of law applicable to the arbitration agreement. (*Id.* at 55.) The Tribunal noted that both parties agreed that Austrian law—as the law of the seat of the Arbitral Tribunal—governed the arbitration agreement in the absence of an express choice of law. (*Id.* at 55-56.) The Tribunal went on to determine that the United Nations Convention on

Contracts for the International Sale of Goods ("CISG") governed issues of substance related to the Contract, with matters not regulated by CISG determined under Ukrainian law. (*Id.* at 71-74.) Applying the CISG and Ukrainian law, the Tribunal found that OTL failed to deliver goods under the Contract, and the Tribunal ordered OTL to pay Progress EUR 17,151,057—representing the return of an advance payment made by Progress to OTL—plus statutory fines, interest, arbitration costs, and legal costs. (Doc. 1 at 2, 5 ¶¶ 5-7, 20; Doc. 10 at 2-3 ¶¶ 5-7, 20; *see also* Doc. 1-2 at 74-95.)

Progress contends that OTL has not complied with the Final Award or made any payments. (Doc. 1 at 5 ¶ 22.) OTL argues that the Final Award should not be confirmed because the Contract's arbitration agreement is unenforceable under Arizona law due to an invalid and non-severable choice-of-law provision. (Doc. 10 at 3-5 ¶¶ 22, 28, 31-37.)

**II.   Discussion**

The confirmation of foreign arbitral awards is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), as implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208. "Confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Castro v. Tri Marine Fish Co.*, 921 F.3d 766, 773 (9th Cir. 2019); *see also Commodities & Minerals Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 809 (2d Cir. 2022) ("An application to confirm a foreign arbitral award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." (internal quotation marks omitted)). Upon proper application,[1] "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or

---

[1] The party applying for confirmation must submit, with the application, a "duly authenticated original award or a duly certified copy thereof," as well as the original or a duly certified copy of the applicable arbitration agreement. New York Convention, Article IV(1)(a)-(b). Progress has properly attached to its Petition a certified copy of the parties' arbitration agreement and a certified copy of the Tribunal's Final Award. (Doc. 1-2 at 3-95.) OTL does not dispute the propriety of Progress's application for confirmation, nor does OTL dispute that the Tribunal's Final Award falls under the New York Convention. *See* 9 U.S.C. § 207.

1  enforcement of the award specified" in the New York Convention.  9 U.S.C. § 207.  The
2  grounds for refusing to confirm an arbitral award are set forth in Article V of the New
3  York Convention.  "These defenses are construed narrowly, and the party opposing
4  recognition or enforcement bears the burden of establishing that a defense applies."
5  *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic*
6  *Def. Sys., Inc.*, 665 F.3d 1091, 1096 (9th Cir. 2011).

7  OTL asks the Court to refuse confirmation under Article V(1)(a) and V(2)(a) of
8  the New York Convention.  (Doc. 10 at 4-8.)

### A. Article V(1)(a)

Article V(1)(a) of the New York Convention provides, in relevant part, that a court may refuse recognition and enforcement of an arbitral award if the party against whom the award is invoked furnishes proof that the arbitration "agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made[.]"  Progress argues that Article V(1)(a) is inapplicable because OTL admits the parties have not subjected their arbitration agreement to a particular governing law, and OTL does not attempt to invalidate the arbitration agreement under Austrian law.  (Doc. 12 at 8-9.)

The Court agrees with Progress that OTL has failed to meet its burden of showing the applicability of an Article V(1)(a) defense.  OTL does not argue that the parties subjected their arbitration agreement to a particular choice of law.  Indeed, OTL argues that the choice-of-law provision in the Contract is invalid and unenforceable.  Accordingly, in order to show the applicability of Article V(1)(a), OTL must establish that the parties' arbitration agreement is invalid under the law of the country where the Final Award was made, namely Austria.  OTL has not attempted to make this showing.

### B. Article V(2)(a)

Article V(2)(a) of the New York Convention provides that a court may refuse recognition and enforcement upon a finding that "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of" the country where recognition

and enforcement is sought. Because arbitration in the United States "is strictly a matter of consent and requires an agreement to arbitrate," a party may establish an Article V(2)(a) defense by showing that no binding arbitration agreement exists. *Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1024 (9th Cir. 2021) (internal quotation marks omitted); *see also Baker Hughes Servs. Int'l, LLC v. Joshi Techs. Int'l, Inc.*, 73 F.4th 1139, 1146 (10th Cir. 2023) ("Because parties cannot be compelled to arbitrate without their consent in the United States, a dispute between parties without a binding arbitration agreement cannot be capable of settlement by arbitration under United States law." (internal quotation marks omitted)).

Progress argues that Article V(2)(a) is inapplicable because the choice-of-law provision in the Contract does not apply to the arbitration agreement, the Tribunal's decision regarding the severability of the choice-of-law provision is entitled to deference, and the choice-of-law provision is severable under either federal common law or Arizona state law. (Doc. 12 at 9-17.)

Federal law governs the question of arbitrability if an Agreement is covered by the FAA and the "the parties have not clearly and unmistakably delegated that nonfederal arbitrability law applies." *See Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (emphasis omitted); see *also Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1168 (9th Cir. 2021) (applying federal common law to determine arbitrability in case involving the New York Convention). Under federal law, "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator," unless "the parties clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Commc'n. Workers of Am.*, 475 U.S. 643, 649 (1986). "[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue[.]" *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995). However, sophisticated parties to commercial contracts clearly and unmistakably indicate an intent to delegate the arbitrability question to an arbitrator if their contract incorporates arbitration rules that give the arbitrator power to rule on his or her own jurisdiction. *See Brennan*, 796 F.3d at

1130; *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074–75 (9th Cir. 2013). If the parties clearly and unmistakably agreed to submit the issue of arbitrability to the arbitrator, then "a court must defer to an arbitrator's arbitrability decision." *First Options of Chicago*, 514 U.S. at 943.

OTL did not express a clear willingness to arbitrate the arbitrability issue merely by challenging the Arbitral Tribunal's jurisdiction during the arbitration proceedings. *See id.* at 946. However, the parties' contract incorporates the rules of the Vienna International Arbitral Centre ("Vienna Rules") (*see* Doc. 1-2 at 11), and Article 24 of the Vienna Rules gives the Arbitral Tribunal the power to decide its own jurisdiction. Based on the parties' incorporation of the Vienna Rules, the Court finds that the parties clearly intended to delegate the arbitrability question to the Tribunal. *See Brennan*, 796 F.3d at 1130; *Oracle Am.*, 724 F.3d at 1074–75. Accordingly, the Tribunal's determination regarding arbitrability is entitled to deference. *See First Options of Chicago*, 514 U.S. at 943. The Court can overturn the Tribunal's determination only if it is "completely irrational or constitutes manifest disregard of the law." *PowerAgent Inc. v. Electronic Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004) (internal quotation marks omitted). OTL has failed to establish that the Tribunal's determination fails under this highly deferential standard.

Even if deference does not apply, the Court agrees with the Tribunal that the choice-of-law provision in the parties' Contract was intended to govern the substantive law applicable to the Contract rather than the arbitration agreement. Because the choice-of-law provision is part of the Contract rather than specifically part of the arbitration agreement, and the arbitration agreement is severable from the rest of the Contract, the invalidity of the choice-of-law provision does not affect the validity of the arbitration agreement. *See Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1248 (9th Cir. 1994) (arbitration clauses are "severable from the documents in which they appear unless there is clear intent to the contrary"). Furthermore, even if the choice-of-law provision is part of the arbitration agreement, the Court finds that it is severable from the arbitration

agreement under federal common law because it "is not an essential part" of that agreement. *See* Restatement (2d) of Contracts § 184 (if a portion of an agreement is unenforceable, a court may enforce the remainder of the agreement "in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange"); *Casa del Caffe Vergnano v. ItalFlavors, LLC*, 816 F.3d 1208, 1212 (9th Cir. 2016) (federal common law looks to general principles for interpreting contracts, including those found in the Restatement (2d) of Contracts). Based on the foregoing, the Court finds that a binding arbitration agreement exists between the parties. Accordingly, OTL's Article V(2)(a) defense fails.

Because OTL has failed to establish a defense under the New York Convention, the Court will grant Progress's Petition to Confirm Arbitration Award.

**C. Post-Judgment Interest**

Progress argues that it is entitled to post-judgment interest at the rate specified in 28 U.S.C. § 1961. (Doc. 1 at 6 ¶¶ 33-34.) OTL argues that post-judgment interest is discretionary. (Doc. 10 at 3-4 ¶ 29-30.)

"Interest shall be allowed on any money judgment in a civil case recovered in a district court," and "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961. "A judgment confirming an arbitration award is treated similarly to any other federal judgment" for purposes of § 1961. *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004).

The language of § 1961 "is mandatory, not discretionary." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran*, 665 F.3d at 1102 (9th Cir. 2011). OTL's argument to the contrary confuses post-judgment interest with post-arbitration award, pre-judgment interest. *See id.* at 1102–1103.

. . . .

**IT IS ORDERED** that the Petition to Confirm Arbitration Award (Doc. 1) is **granted**. Respondent's Cross-Petition (Doc. 10) is **denied**. The Final Award issued by the Arbitral Tribunal on October 30, 2024 (Doc. 1-2 at 26-96), is **confirmed**.

**IT IS FURTHER ORDERED** that, in conformity with the Final Award, Respondent OTL Firearms and Imports Corporation shall pay the following to Petitioner Subsidiary Enterprise of State Company "Ukrspecexport" State Enterprise Specialized Foreign Trade Firm "Progress" ("Progress"):

1. EUR 17,151,057, representing the advance payment made by Progress under the Contract;
2. Simple interest for the amount of EUR 17,151,057 as follows:
   - A. at a rate of 5.73% per annum from September 8, 2022, for the sum of EUR 114,373;
   - B. at a rate of 6.95% per annum from November 8, 2022, for the sum of EUR 1,398,694.50; and
   - C. at a rate of 6.95% per annum from November 16, 2022, for the sum of EUR 15,637.989.50;
3. Statutory penalties and fines in the amount of EUR 994,650.29;
4. Arbitration costs in the amount of EUR 292,062.55 and legal costs in the amount of EUR 72,199.11, to begin accruing upon the date of this Court's Order; and
5. Post-judgment interest pursuant to 28 U.S.C. § 1961.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Petitioner and close this case.

Dated this 9th day of September, 2025.

_____
Honorable Rosemary Márquez
United States District Judge